# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

CHRISTOPHER A. CARDWELL, )
)
               Petitioner, )
)
v. )       **Case No. 18-CV-0199-CVE-FHM**
)
JOE ALLBAUGH, )
)
               Respondent. )

## OPINION AND ORDER

Petitioner Christopher Cardwell, a state inmate appearing pro se,[1] filed a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 3) seeking relief from the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2012-3894. Before the Court is respondent's motion to dismiss the petition as time-barred (Dkt. # 10). Respondent filed a brief in support of the motion (Dkt. # 11), and petitioner filed a response (Dkt. # 12). For the reasons discussed below, the Court finds that respondent's motion to dismiss shall be granted and that the petition for writ of habeas corpus shall be dismissed with prejudice as time-barred.

## I.

In April 2013, a jury convicted petitioner of two counts of first degree rape, in violation of OKLA. STAT. tit. 21, § 1115, and one count of kidnapping, in violation of OKLA. STAT. tit. 21, § 741,

---

[1] Because petitioner appears pro se, the Court liberally construes his pleadings. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

all after former conviction of two or more felonies. Dkt. # 3, at 1, 23.[2] The evidence presented at

trial established the following:

> [Petitioner] and K.M., the victim, were acquaintances with a number of mutual friends. The two exchanged phone numbers and had previously engaged in sexual relations. On the evening of August 24, 2012, [petitioner] and K.M. exchanged text messages and ultimately agreed to go to a bar together for drinks. [Petitioner] picked K.M. up at her friend's apartment but, instead of taking her to a bar, drove her to Central City Mobile Services, a semi-truck repair business. [Petitioner] explained that he was recently hired by Central City and wanted to show her where he worked.
>
> As they walked through the repair yard, [petitioner] grabbed K.M. from behind and threw her to the ground. After a struggle in which [petitioner] choked K.M., he tied her hands and covered her mouth and head with painter's tape. [Petitioner] removed her shorts and, without her consent, penetrated her vagina and then her anus with his penis. K.M. screamed and attempted to remove the tape from her mouth. When the tape loosened, [petitioner] remarked "I should have got duct tape instead."
>
> When the assault ended, K.M. pulled the tape from her face and head and left it on the ground; police later recovered this tape as evidence. [Petitioner] dropped the victim off at a fast food restaurant near her friend's apartment. K.M. walked to her friend's apartment and the police were called to report that she had been raped. [Petitioner] returned home where his live-in girlfriend noticed visible abrasions on his collarbone, forehead, and knees. K.M. had redness, bruising, and abrasions to her face, arms, legs, and back which were consistent with her account of the assault. In addition, the SANE exam showed her to have abrasions to her vagina and anus that were consistent with forced sexual intercourse. [Petitioner's] theory of defense at trial was that the victim consented to all of the acts.

Dkt. # 11-1, at 2-3.[3]

---

[2]    For consistency, the Court's record citations refer to the CM/ECF header page numbers in the upper right-hand corner of each document.

[3]    Neither party provided trial transcripts, but respondent provided a copy of the summary opinion issued by the Oklahoma Court of Criminal Appeals (OCCA) when it affirmed petitioner's judgment and sentence on direct appeal. Dkt. # 11-1. On habeas review, factual findings made in state court as to "basic, primary, or historical facts" are presumed correct absent clear and convincing evidence to rebut that presumption. Thompson v. Keohane, 516 U.S. 99, 110 (1995); 28 U.S.C. § 2254(e)(1). Because petitioner has not rebutted the presumption of correctness, the Court adopts the foregoing summary of facts from the OCCA's opinion.

Following the trial, and consistent with the jury's recommendations, the state district court sentenced petitioner to life imprisonment without parole for each rape conviction and life imprisonment for the kidnapping conviction. Dkt. # 11-1, at 1. The court ordered the two sentences of life without parole to be served consecutively to each other and the life sentence to be served concurrently with the first sentence of life without parole. Id.

Represented by counsel, petitioner filed a direct appeal raising seven propositions of error. Id. at 1-2. Petitioner also filed a pro se supplemental brief, raising three additional propositions of error. Id. at 2. By unpublished opinion filed August 19, 2014, in Case No. F-2013-479, the Oklahoma Court of Criminal Appeals (OCCA) affirmed petitioner's convictions and sentences. Id. at 18. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Dkt. # 3 at 2. On November 23, 2015, petitioner filed an application for post-conviction relief in state district court, asserting three claims for relief. Id. at 3, 16-17. The state district court denied his application on May 30, 2017. Id. at 14. By unpublished order filed January 19, 2018, in Case No. PC-2017-664, the OCCA affirmed the denial of post-conviction relief. Id. at 23-25.

On April 9, 2018, before filing a federal habeas petition, petitioner filed a motion asking this Court to extend or reopen the time to file a federal habeas petition. Dkt. # 1. In the motion, petitioner alleged that his convictions became final on August 19, 2014, and that circumstances beyond his control prevented him from filing a federal habeas petition before his "one (1) year and thirty (30) days" expired. Id. at 1. By order filed April 12, 2018 (Dkt. # 2), the Court denied petitioner's motion, noting it had no authority to grant his request.

Petitioner filed the instant federal habeas petition (Dkt. # 3) on May 10, 2018.[4]  He seeks federal habeas relief on four grounds:  (1) he was denied effective assistance of trial counsel, (2) he was deprived of a fair trial due to prosecutorial misconduct, (3) he was deprived of a fair trial due to "multiple instances of trial error," and (4) he was denied effective assistance of appellate counsel. Dkt. # 3, at 4-5, 7-8.

In response to the petition, respondent filed a motion to dismiss (Dkt. # 10) and supporting brief (Dkt. # 11).  Respondent contends the habeas petition is time-barred because petitioner did not file it within the one-year statute of limitations in 28 U.S.C. § 2244(d)(1)(A).  Dkt. # 11, at 1-2. Respondent further contends petitioner is not entitled to statutory tolling of the one-year period under § 2244(d)(2) and petitioner has not demonstrated any circumstances that would support equitable tolling of, or an equitable exception to, the one-year period.  Id. at 2-4.

Petitioner acknowledges that his petition is untimely, but seeks equitable tolling.  Dkt. # 3, at 11; Dkt. # 12, at 1-3.  More specifically, he urges this Court to toll six months of the one-year limitation period because, he claims, he was denied access to a law library for the first six months of his one-year period.  Dkt. # 3, at 11; Dkt. # 12, at 2-3.  He further alleges that when he was transferred to a different prison, staff at his former prison deleted the "habeas work" he had saved to a floppy disk, forcing him to "start over on his habeas petition."  Dkt. # 1, at 9; Dkt. # 3, at 11; Dkt. # 12, at 2-3.  In the alternative, petitioner asserts that he can avoid the time bar based on a claim

---

[4]     The Clerk of Court received the habeas petition on May 14, 2018.  Dkt. # 3, at 1.  However, because the record reflects that petitioner submitted the petition to the prison's legal mail system on May 10, 2018, the petition is deemed filed as of that date.  Dkt. # 3, at 12-13, 32; see Burger v. Scott, 317 F.3d 1133, 1136 n.3 (10th Cir. 2003) ("Under the federal prisoner mailbox rule, a *pro se* prisoner's cause of action is considered filed when the prisoner delivers the pleading to prison officials for mailing.").

of "actual innocence" because evidence that was not presented at trial would "prove that [he] was falsely accused of a crime that he did not commit." Dkt. # 3, at 27-28; Dkt. # 12, at 4.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA), imposes a one-year statute of limitations for state prisoners filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). Generally, the one-year period begins when a prisoner's conviction becomes final by the conclusion of direct review or by the expiration of the time for seeking direct review. Id. § 2244(d)(1)(A); see also Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) (discussing when state judgments become final under § 2244(d)(1)(A)). The one-year period also may commence on a different date under the terms of § 2244(d)(1)(B), (C), and (D).[5] Regardless of which date the one-year limitation period commences, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year period. Id. § 2244(d)(2). However, under § 2244(d)(2), "[o]nly state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations." Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006). Because the AEDPA's one-year limitation

---

[5]     Under § 2244(d)(1), the one-year period begins on the "latest of" the following:

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

period is not jurisdictional, it is also subject to equitable tolling in some circumstances, Holland v. Florida, 560 U.S. 631, 645 (2010), and may be "overcome" with "a credible showing of actual innocence," McQuiggin v. Perkins, 569 U.S. 383, 392 (2013).

## A.     The petition is untimely under § 2244(d)(1)(A).

Petitioner does not dispute that the petition is untimely under § 2244(d)(1)(A). The OCCA affirmed petitioner's judgment and sentence on August 19, 2014, and he did not file a petition for writ of certiorari in the United States Supreme Court. Dkt. # 3, at 2; Dkt. # 11-1, at 1. Petitioner's convictions therefore became final on November 17, 2014, when the 90-day period for filing a petition for writ of certiorari expired. Gonzalez, 565 U.S. at 150. Petitioner's one-year period commenced the next day, November 18, 2014, and, absent any tolling events, expired on November 18, 2015. See United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003) (applying FED. R. CIV. P. 6(a) to calculate AEDPA one-year limitation period). As respondent contends, petitioner is not entitled to statutory tolling of the one-year period because he did not file an application for post-conviction relief in state court until November 23, 2015, five days after his one-year limitation period expired on November 18, 2015.[6] See Clark, 468 F.3d at 714. Petitioner did not file his federal habeas petition until May 10, 2018, over two years after his one-year period expired. Thus,

---

[6]     Petitioner alleges he placed his application for post-conviction relief in the prison's legal mail system "prior to" November 17, 2015. Dkt. # 12, at 2. But Oklahoma does not recognize a prison mailbox rule for filings by pro se prisoners. Burger, 317 F.3d at 1140-41. As a result, petitioner's application for post-conviction relief was filed on the date the state district court clerk stamped his application as received, November 23, 2015. See id. at 1140 (explaining that state post-conviction filing is "properly filed" under Oklahoma law as of date "the proper documents were either delivered to or received by the courts, rather than to or by prison officials").

absent a showing that the one-year period should be tolled for equitable reasons, the habeas petition is time-barred.

**B.      Petitioner has not demonstrated any circumstances that warrant equitable tolling.**

The Court agrees with respondent that petitioner has not demonstrated any extraordinary circumstances that would justify equitably tolling the one-year limitation period.  "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs," and must "be applied sparingly."  Yang v. Archuleta, 525 F.3d 925, 929 (10th Cir. 2008) (first quoting Wallace v. Kato, 549 U.S. 384, 396 (2007); then quoting Nat'l. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).  To obtain equitable tolling, a petitioner must establish  "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of his federal habeas petition.  Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Menominee Indian Tribe of Wisc. v. United States, 136 S. Ct. 750, 756 (2016) (explaining that "the diligence prong . . . covers those affairs within the litigant's control" whereas the "extraordinary-circumstances prong . . . is meant to cover matters outside its control").  The burden rests with the petitioner to allege "specific facts to support his claim of extraordinary circumstances and due diligence." Yang, 525 F.3d at 928 (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)).

In support of his request for equitable tolling, petitioner alleges he "was denied access to the law library for six (6) of the twelve (12) months that the AEDPA provides."  Dkt. # 12, at 2.  He asserts:

> Due to the lack of access to law-library that [he] experienced, [he] was unable to do research accordingly, and therefor had to rely upon the only case law and court citations that were available.  The only such case law and citations available to [him] were those already used in his direct appeal.  As a result, [he] was unable to access

any new or better information related to his case or the issues that may or may not be appropriately raised at any given time of the appellate process. [He] was also denied the assistance of more experienced legal aid, for without access to the Law-Library, [he] was also without access to Legal clerks. Petitioner was thus without knowledge of legal processes and without a way to know which questions to ask in order to learn the processes related to his appellate procedures.

Dkt. # 12, at 3. Petitioner contends that once he gained access to the law library, in May 2015, he worked diligently to pursue his habeas claims. Dkt. # 3, at 11; Dkt. # 12, at 2-3. More specifically, he alleges he "began work on his post-conviction application" on May 20, 2015, "began to prepare work for his post-conviction appeal as soon as his post-conviction application was submitted (November 23, 2015)," and "began work on his habeas petition as soon as his post-conviction appeal was filed (June 26, 2017)." Dkt. # 3, at 11. Finally, he alleges he faced an additional obstacle: the "habeas work" he had saved to a floppy disk was deleted by facility staff when he was transferred to a different facility, forcing him to "start over on his habeas petition" in March 2018. Dkt. # 1, at 2, 9; Dkt. # 3, at 11 & n.1. Based on these circumstances, petitioner seeks equitable tolling for six months, asserting "that had he not been denied access to the law library . . . or had his previous work not been deleted by staff, then [he] would be within the limits to timely file for habeas relief." Dkt. # 3, at 11.

For two reasons, the Court denies petitioner's request for equitable tolling. First, by alleging he was denied access to a law library, denied access to other legal resources and "without knowledge of legal processes," petitioner describes fairly common circumstances, not "rare and exceptional" ones that would support equitable tolling. Burger, 317 F.3d at 1141; see, e.g., Levering v. Dowling, 721 F. App'x 783, 788 (10th Cir. 2018) (unpublished)[7] (finding that "the limited time [petitioner]

---

[7]    The Court cites this decision, and other unpublished decisions herein, as persuasive authority, not as binding precedent. See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A),

had to access the prison law library, his status as a pro se litigant, and the trial court's failure to provide him with transcripts" did not demonstrate extraordinary circumstances); Porter v. Allbaugh, 672 F. App'x 851, 857 (10th Cir. 2016) (unpublished) (rejecting petitioner's argument that "*general* difficulties in obtaining trial transcripts and in accessing the prison law library" warranted equitable tolling); Garcia v. Hatch, 343 F. App'x 316, 318-19 (10th Cir. 2009) (unpublished) (rejecting petitioner's arguments that the State's alleged failure to "provide him with access to a law library and adequate legal assistance from other prisoners" rendered him "incapable of filing a timely habeas petition"); Stanley v. Ward, 121 F. App'x 332, 334 (10th Cir. 2005) (unpublished) ("[W]e have routinely held that bare allegations of denial of access to a law library or legal resources . . . are not sufficient, standing alone, to entitle a petitioner to equitable tolling."); Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) ("[A] claim of insufficient access to relevant law . . . is not enough to support equitable tolling."); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (noting well-established rule that "ignorance of the law, even for an incarcerated pro se prisoner, generally does not excuse prompt filing" (quoting Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999)); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (concluding that, in seeking equitable tolling, "[i]t is not enough to say that the [prison] lacked all relevant statutes and case law or that the procedure to request specific materials was inadequate").

Second, even if petitioner's circumstances were sufficiently extraordinary, the record does not show that he diligently pursued his federal claims. See Pace, 544 U.S. at 418 (identifying diligence and extraordinary circumstances as "two elements" that must be established to obtain equitable tolling and stating "[e]ven if we were to accept petitioner's theory [that he faced extraordinary circumstances], he would not be entitled to relief because he has not established the

requisite diligence"). As previously mentioned, petitioner acknowledged the untimeliness of his federal habeas petition by filing a pre-petition motion to extend or reopen the time to file a habeas petition. Dkt. # 1. In that motion, petitioner expressed his understanding that he had "one (1) year and thirty (30) days" from August 19, 2014, the date the OCCA affirmed his convictions on direct appeal, to file a timely federal habeas petition. Id. at 1. Petitioner's understanding was incorrect; his one-year limitation period commenced on November 18, 2014, and expired on November 18, 2015. In any event, petitioner's incorrect understanding suggests he believed that his filing deadline would be September 19, 2015, absent any tolling events. Nonetheless, he did not file his application for post-conviction relief in state court until November 23, 2015. Dkt. # 1, at 1-2; Dkt. # 3, at 3, 11.[8] This was over two months after the incorrect AEDPA deadline of September 19, 2015, and, more importantly, five days after the correct AEDPA deadline of November 18, 2015. Even accepting as true that petitioner did not have access to a law library until May 2015,[9] he fails to allege with specificity why, if working with diligence, he was incapable of filing his application for post-conviction relief in state court on or before November 18, 2015, when his actual AEDPA deadline

---

[8]    As previously noted, see supra n. 6, petitioner asserts in his response to the motion to dismiss that he submitted his application for post-conviction relief "prior to the November 17, 2015 dead-line" but it "was not stamp filed until the 23rd of November, 2015." Dkt. # 12, at 2. For purposes of statutory tolling, the stamp-filed date controls. See Burger, 317 F.3d at 1140. Notably, petitioner did not suggest he submitted his application on November 17, 2015, until after respondent asserted that petitioner could not benefit from statutory tolling. See Dkt. # 11, at 2-3; Dkt. # 12, at 2.

[9]    This is a difficult truth to accept in light of petitioner's claim that he was denied access because he was held in a maximum security facility. Dkt. # 1, at 1-2, 4-7; Dkt. # 12, at 2. The law library policy excerpt petitioner submits in support of his claim provides that even prisoners held in segregated housing or a restricted unit may request legal materials from the law library. Dkt. # 1, at 8.

expired.  Dkt. # 11, at 3.[10]  See Burger, 317 F.3d at 1142 ("While Oklahoma imposes no time limits

for filing applications for post-conviction relief in the district courts, since 1996 Oklahoma inmates

have been aware that they have one year in which to file their claims in state court in order to benefit

from tolling pursuant to § 2244(d)(2).").  Moreover, petitioner admits he did not even begin working

on his federal habeas petition until June 26, 2017.  Given that petitioner (1) appears to have

understood, albeit incorrectly, that his AEDPA deadline would expire on September 19, 2015, and

(2) did not file his application for post-conviction relief in state court until November 23, 2015, it

is unfathomable that he could have reasonably believed he could then wait until June 2017 to

*begin* working on his federal habeas petition.[11]  On this record, the Court cannot find that petitioner

diligently pursued his federal habeas claims.

---

[10]     This is particularly so in light of (1) the fact that he filed the application only five days later,
and (2) the state district court's findings that two of the propositions of error asserted in
petitioner's application for post-conviction relief were "substantively identical" to
propositions he raised on direct appeal in his pro se supplemental brief and that petitioner
was "essentially attempting to subdivide issues raised within his direct appeal and re-litigate
them within post-conviction proceedings."  Dkt. # 3, at 16-19.

[11]     Petitioner's March 22, 2018 "request to staff" further undermines his claim of diligence.
Dkt. # 1, at 9.  Therein, he states he was "still working" on his petition in March 2018 when
he requested the floppy disk containing his saved "legal work."  Id.  Even assuming there
was some justification for not beginning work on his habeas petition until June 2017, it
seems inexplicable that petitioner, if diligently pursuing his federal claims, would still be
working on the petition nearly one year later in March 2018.  The only rational explanation
suggested by the record is that petitioner may have mistakenly believed that he successfully
stopped the AEDPA clock by filing his post-conviction application on November 23, 2015.
However, even that explanation is undermined by petitioner's own allegation that he initially
understood his deadline for filing a timely habeas petition would be September 19, 2015.

Because petitioner has not shown that he diligently pursued his federal claims but was somehow prevented from filing a timely habeas petition due to extraordinary circumstances beyond his control, he is not entitled to equitable tolling of the one-year period.

**C.      Petitioner's actual-innocence claim is not credible.**

Finally, petitioner attempts "overcome" the one-year limitation period by asserting a claim of "actual innocence."  Dkt. # 3, at 27; Dkt. # 12, at 3-5.  In his petition, petitioner's "actual-innocence" claim appears to focus on trial counsel's alleged failures to have DNA evidence analyzed before trial and to present at trial what petitioner believes would have been "exculpatory" evidence, namely DNA evidence and certain cell phone records.  Dkt. # 3, at 27-28.  In his response to the motion to dismiss, petitioner reasserts that this evidence supports his claim of actual innocence and requests "that an evidentiary hearing be made and counsel appointed in order to prove actual innocence and restore the balance of justice for an innocent man convicted."  Dkt. # 12, at 4-5.[12]

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome the expiration of the AEDPA's statute of limitations and permit a federal habeas court to review the merits of an untimely habeas claim.  Perkins, 569 U.S. at 386.  But "tenable actual-

---

[12]      Respondent's five-page brief in support of his motion to dismiss is less than helpful on this issue.  Despite petitioner's references in his habeas petition to specific evidence that he claims is "exculpatory," respondent fails to mention that evidence or otherwise attempt to address petitioner's actual-innocence claim in a manner that could assist the Court in evaluating that claim.  Dkt. # 11, at 4-5.  Instead, respondent provides general statements from cases discussing "actual-innocence" claims, asserts that "[t]he habeas claims raised by [p]etitioner are not evidence of actual innocence," and concludes without analysis that "[p]etitioner's claims fail to show actual innocence."  Id. at 4.  As discussed below, the Court agrees with respondent's ultimate conclusion that petitioner has not asserted a credible claim of actual innocence.  Nonetheless, respondent's decision to brief this issue as one having a foregone conclusion, particularly when petitioner cites specific evidence in support of his claim, is akin to a complete failure to brief the issue.

innocence gateway pleas are rare." Id.  The Supreme Court has explained that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 401 (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995)). The "Schlup standard is demanding." House v. Bell, 547 U.S. 518, 538 (2006).  To present a "credible" actual-innocence claim a "petitioner [must] support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Ultimately, to pass through the Schlup gateway, a petitioner must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." House, 547 U.S. at 538.  To determine whether a petitioner has made this showing, "the federal court [must] assess how reasonable jurors would react to the overall, newly supplemented record." Id.; see also id. at 539 (noting that "the Schlup inquiry . . . requires a holistic judgment about 'all the evidence,' and its likely effect on reasonable jurors applying the reasonable-doubt standard" (quoting Schlup, 513 U.S. at 328)).

Here, petitioner's actual-innocence claim is intertwined with his ineffective-assistance-of-trial-counsel claim and focuses on two types of evidence not presented at trial which, he claims, would exonerate him.  First, petitioner alleges that "DNA sample[s] were collected from skin scrapings beneath the [victim's] fingernails" and that he provided a DNA sample through a buccal swab.  Dkt. # 3, at 27.  He alleges trial counsel failed to have these DNA samples "compared," and, "[h]ad she done so . . . the skin scraping samples would not match [his] DNA sample." Id.  Second, petitioner alleges that "cell phone records" from his phone and the victim's phone "were available

and accessible at trial" but not introduced.[13] Id. at 27-28. According to petitioner, these cell phone records are "exculpatory and key" because "had they been presented, then the jury would have seen that there were several calls to and from [the victim's] phone at times within the time frame that she says she was being raped." Id. at 28. He further alleges that the jury could have seen "text messages between" petitioner and the victim demonstrating "the plans that they made to engage in sexual intercourse." Id. Finally, he alleges the victim's cell phone records would have also demonstrated that the victim "was having an argument via text and social media with" a different male acquaintance and that "other evidence would show the jury that [that] argument . . . turned into an altercation . . . after [petitioner] left for home" and "led to the false allegations placed upon [petitioner]." Id.

As discussed, when a habeas petitioner asserts an actual-innocence gateway claim, supported by evidence that was not presented at trial, the habeas court must consider "how reasonable jurors would react to the overall, newly supplemented record" and make "a holistic judgment about 'all the evidence,' and its likely effect on reasonable jurors applying the reasonable-doubt standard." House, 547 U.S. at 538-39 (quoting Schlup, 513 U.S. at 328). For two reasons, the Court finds that petitioner has not satisfied the "demanding" Schlup standard. Id. at 538. First, petitioner's assertion that the untested "skin scrapings" from the victim's fingernails "would not match [his] DNA sample," Dkt. # 3, at 27, is entirely speculative given that the DNA evidence has never been

---

[13]    While petitioner asserts the purportedly "exculpatory" cell-phone records were "available and accessible" to defense counsel at trial, petitioner fails to submit those records to this Court in support of his actual-innocence claim.

analyzed.[14] Schlup requires reliable, exculpatory scientific evidence, not speculation about untested scientific evidence. 513 U.S. at 324. Thus, petitioner's "blanket assertion that DNA testing would exonerate him of his crimes" does not support a credible claim of actual innocence. Chavez v. Trani, 534 F. App'x 799, 801 (10th Cir. 2013) (unpublished). Further, given that petitioner's theory of defense at trial was that the victim consented to the acts alleged, Dkt. # 11-1, at 3, the Court does not find it probable that either the presence or absence of petitioner's DNA under the victim's fingernails would have had an appreciable impact on a reasonable juror applying the reasonable-doubt standard. House, 547 U.S. at 538-39; see, e.g., Carter v. Pierce, 196 F. Supp. 3d 447, 454-55 (D. Del. 2016) (rejecting petitioner's assertion of actual innocence and stating, "by arguing that the victims consented to the sexual intercourse, petitioner admits to having had sexual intercourse with them, thereby rendering the existence or non-existence of DNA evidence irrelevant").

Second, the record reflects that the jury considered at least some cell phone records and it is not clear how the presentation of additional cell phone records would have made it more likely than not that no reasonable juror would find petitioner guilty beyond a reasonable doubt. As previously stated, evidence presented at trial established that petitioner and the victim "exchanged text messages and ultimately agreed to go to a bar together for drinks." Dkt. # 11-1, at 2. Even assuming petitioner could have presented additional cell-phone records showing that (1) the victim had an argument with another male via text message and social media and (2) agreed to have sexual

---

[14]     Nothing in the record suggests that petitioner has pursued testing of the DNA samples in state court under Oklahoma's Postconviction DNA Act, OKLA. STAT. tit. 22, § 1373, et seq. While the failure to pursue relief does not preclude petitioner from seeking application of Perkins equitable exception, his delay in doing so does impact this Court's assessment of whether his assertion of "actual innocence" is credible. See Perkins, 569 U.S. at 399 (noting that a prisoner's "delay in proffering new evidence" may be considered in determining "whether actual innocence has been convincingly shown").

intercourse, rather than just drinks, with petitioner, the Court must consider how this new evidence, in light of all other evidence presented at trial, would have impacted a reasonable juror. House, 547 U.S. at 538-39. Evidence presented at trial established that after petitioner and the victim agreed to go to a bar for drinks, petitioner picked up the victim from her friend's apartment and "instead of taking her to a bar, drove her to Central City Mobile Services, a semi-truck repair business." Dkt. # 11-1, at 2-3. There, "as they walked through the repair yard, [petitioner] grabbed [the victim] from behind and threw her to the ground," "choked" her, "tied her hands and covered her mouth and head with painter's tape" then "removed her shorts" and vaginally and anally raped her. Dkt. # 11-1, at 3. Other evidence presented at trial established that (1) police found painter's tape in the parking lot consistent with the victim's testimony that she removed it from her head after petitioner finished assaulting her, (2) the victim suffered vaginal and anal injuries consistent with forced intercourse as well as other bruising and abrasions consistent with her account of the assault, and (3) petitioner's live-in girlfriend noticed that when petitioner returned home he had "visible abrasions on his collarbone, forehead, and knees." Id. at 2-3. Viewing the trial evidence as supplemented by petitioner's purportedly "exculpatory" cell-phone records, the Court finds it highly improbable that a reasonable juror applying the reasonable-doubt standard would have reached a different verdict.

For these reasons, the Court concludes that petitioner cannot rely on the equitable exception recognized in Perkins to overcome the fact that his petition is time-barred.

## III.

Petitioner's habeas petition is untimely under § 2244(d)(1)(A) and he has not demonstrated that he can overcome the time bar through either equitable tolling of, or an equitable exception to, the AEDPA's one-year limitation period. Thus, the Court finds that respondent's motion to dismiss

shall be granted and that the petition for writ of habeas corpus shall be dismissed with prejudice as time-barred. As a result, the Court declares moot petitioner's requests for an evidentiary hearing and appointment of counsel.

### Certificate of Appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court dismisses a habeas petition on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not debate the correctness of the Court's determinations that the petition is time-barred and that petitioner has not demonstrated any circumstances excusing the untimeliness of his petition. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Respondent's motion to dismiss the petition as time-barred (Dkt. # 10) is **granted**.

2. The petition for a writ of habeas corpus (Dkt. # 3) is **dismissed with prejudice**.

3. Petitioner's requests for an evidentiary hearing and appointment of counsel are **declared moot**.

4. A certificate of appealability is **denied**.

5.    A separate judgment shall be entered herewith.

**DATED** this 20th day of November, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE